McKinney, J.,
delivered the opinion of tbe Court.
On the. 21st of July, 1853, Henegar sold and conveyed to Lyman W. Gilbert, “one undivided half of all the mines, minerals, fossils, and fossil substances, or other minerals, in and upon ” certain specific lands lying in Polk County, containing in all, three hundred and forty acres. The consideration recited in the conveyance is three thousand five hundred dollars in money, and the “further consideration of ten thousand shares in a company thereafter to be. formed upon the lands.” The said shares to be of the nominal value of ten dollars each; with a guarantee on the part of Gilbert, that the shares should be worth, and sell for five dollars per share, in three years from the date of the conveyance.
An instrument of guaranty was accordingly executed, by Gilbert, of even date with the conveyance; in which he binds himself to Henegar, “that said stock shall be worth, and selling for, five dollars a share, at least, within the next three years. And that in case the said stock shall fail to be worth five dollars per share within said time, that then, in that case, he, the said Gilbert, shall make good the same.”
On the 26th of January, 1854, said Gilbert, and five other persons, were incorporated by the Legislature of this State, “ a body politic and corporate, by the name and style of the “Isabella Copper Company,” for the purpose of exploring and mining for copper and other ores,” &c.
*243 Afterwards, on the 18th of August, 1855, Gilbert conveyed his interest, under the purchase from Henogar, to the Copper Company ; and said company placed itself, in all things, in the shoes of Gilbert, and became bound to Henegar, by a new guarantee, that the ten thousand shares of stock in said company “will be worth at least five dollars per share, in three years from the 21st of July, 1853, and if not worth that much, by the expiration of said three years, that said company will make good, and pay over the deficiency, to the said Henegar, or his assigns.” The former guarantee of Gilbert was surrendered. A certificate of the ten thousand shares of stock was issued and delivered to Henegar, who transferred two-thirds of the stock to others, retaining, himself, 3,333 shares thereof.
After the expiration of three years, namely, on the 25th Sept., 1856, Henegar filed this bill, the substantial ground of which is, that his stock in said company remained unsold, for the reason, that it had not been, within the three years, nor was it, at the time of filing the bill, of any market value.
The answer of the company denies that the stock was of no market value within the three years limited in the contract, and avers that considerable sales of the stock of said company had been made in the city of New York, within three years, at $4.50 per share, and upwards ; and that one thousand shares had been sold at five dollars per share. And these averments are sustained by proof. But it appears, from the record, that in Tennessee, said stock was not in demand, at any time within the three years, or since; and that, in the Tennessee market, it would not command more than 25 to *244 50 cents per share, and that but little could be sold at this reduced price.
The bill seeks to hold the company liable for the full amount of five dollars per share, of the stock, upon the assumption, that, in Tennessee, the place of the contract, the stock was really of no value in the market, at the expiration of the period of three years, or, at least, that the company shall make up the difference between five dollars per share, and the merely nominal value of the stock in the Tennessee market, at the expiration of the three years.
It appears that the corporators of the “Isabella Copper Company,” were residents of New York, and that the office of the Company was there.
For the complainant, it is insisted, that, by the proper construction of the guarantee, the time for the ascertainment of the value of' the stock, was the day of the expiration of the period limited, and the place, the Tennessee market
On the- other hand, it is maintained, that the value of the stock is to be determined by the price at which it was selling, or might have been sold, in the principal stock markets of the Union, if not of the world. And as the proof shows, that the city of New York is the chief market for such stocks in this country, it is insisted that the utmost the complainant can be entitled to, is, the difference between five dollars per share, and the highest price at which the stock was sold, or might have been sold, in the New York market, at any time within the limited period, and not the reduced price at which it was selling at the expiration of that period. It will be seen by comparing the guarantee of Gilbert, *245 with that subsequently given by the company, that there is a verbal difference, at least, between them.
By the former, it is stipulated, that, “ if the stock shall fail to be worth five dollars per share within said time, then he, Gilbert, shall make good the same.”
But, in the latter guarantee, it is provided, that, if the stock shall not be worth five dollars - per share, “by the expiration of said three years,” the company will make good and pay over the deficiency to said Hene-gar,” &c.
The latter stipulations, though not so variant in the meaning, as to materially effect the construction from the former, is more explicit, and establishes that the proper time for determining the market value of the stock is at the “expiration” of the three years from the date of the contract and not any indefinite time “within” that period.
The reservation of so long a time, was, obviously, for the benefit of the company. But with this advantage on the part of the latter, the risk was taken upon itself, that the stock should be worth the price fixed upon, not merely within the three years, but at the expiration of that time. It is certainly true, that the complainant might have sold his stock at any time within the period limited, but he was not bound to do so, especially at a less price than five dollars per share. It is clear, that, if he had voluntarily sold within the three years, at less than five dollars, it would have been at the peril, that jf the price advanced to five dollars within that time, the guarantor would be discharged, and the complainant must have borne the loss.
The complainant was not bound to foresee the state of the market at the end of the three years: the hazard) *246 as to that matter, was devolved, not upon him, but upon the company. He was safe in reposing upon his guarantee, that, at all events, his stock would be worth five dollars per share, to him, at the expiration of the limited period, irrespective of its value in the market. Whether or not, in the event the price of the stock had advanced to five dollars, at any time within the three years, the company could have shifted the risk of the market over upon the complainant, by requesting him to avail himself of the then market value, we need not inquire. Possibly it would be held, tíiat, the complainant had the right, under the terms of the guarantee, to hold on to his stock, in the expectation that its value might advance above five dollars by the expiration of the limited time, having the assurance, by the terms of the guarantee, that it would be worth to him, at least, that price, in any event.
The whole thing was a mere speculation at the time of the contract, the stock had no fixed, perhaps no intrinsic value ; and it depended upon matters of chance, whether it would ever be of any value.
The future developement of rich minerals upon the land, and the rage for speculation, might, in the course of a few years, give it a high value, or the bubble might burst, and the stock prove utterly valueless. This hazard was known to the parties; and in view of it, the company stipulated for such a period of time, as was thought would be amply sufficient to test the extent and value of the minerals, and also to advance the stock to a fair value in the market.
It is very clear that the Company had the whole period of three years to make the experiment, and if, at *247 the close, though it were the very last day, the stock chanced to be of the value of five dollars per share, their guarantee would have been fulfilled. And as the operation of the contract must be mutual, it is no less clear, that the complainant could not be compelled to dispose of his stock before the end of the term fixed on, because, by possibility, at that time it might have advanced beyond five dollars.
Bui'' in the next place, we think the value of the stock at the eud of the three years, is not to be regulated by the demand or value in the home market, but by its value at that time, in the usual markets for such stocks in any of the States of the Union, or even in foreign markets, if in the course of dealing in such stocks, foreign markets were resorted to for the sale thereof, by speculators of this country. It cannot be supposed that the parties intended to regulate the value of the stock, by a market in which there was little or no demand for it. They must be taken as men of ordinary common sense to have intended, that the stock, if sold, should be offered in the best markets, no matter where. And by the same criterion, the value must be fixed in the state of the case presented in the record.
The resuit of cur opinion »is, chat the measure of compensation to which the complainant is entitled, is the difference between five dollars and the current value of the stock, immediately on the expiration of the three years in the test markets for i-ue sale of this and similar stocks in this country, or in a foreign country, according to the ordinary course of dealings in such stocks.
Decree affirmed.